Well, five of Loyal defendant Lady turning with Jamie attorney good morning. Approached Good morning, your honors. May it please the court. I am Jamie Montgomery, assistant appellate defender with the Office of the State Appellate Defender here today on behalf of Mr Michael Delaney, the defendant appellant. This case presents two issues. The first, whether the sentencing enhancement factor was proven beyond a reasonable doubt, and the second, whether the trial court conducted a proper crankle inquiry. I'd like to address the crankle issue first. In its brief, the state has merely offered a rehash of the exact argument and presented and the exact argument. This court, in fact, Justice Burke and Justice Shostak were on the panel, Ramsey Miller and rejected that argument explicitly. The state has not presented anything in addition to its argument as to why this court should stray from the well reasoned decision in Ramsey Miller and the first sister cases that it relies on. Aside from the fact that Radford and Ward were rejected in Ramsey Miller, but additional cases from the appellate court and first district regarding this issue, that all require the defendant to come up with some minimum level of specificity before the court is required to inquire. All seemingly ignore more. And the reason that is is because the holdings that they cite to to support that you follow citations back, you end up at three more time. When when was the court triggered? When was the duty of the court triggered to inquire as to his statement or allegations of ineffective assistance? At what point in proceedings? I would say during the statement and allocution when he first stated that he had complaints about his attorney. Those statements were very specific, though. I mean, the complaints were very specific as to specific pieces of evidence that should have been introduced. They were, uh, if the trial court realized that, you know, they didn't carry any weight. Trial courts left to inquire. I mean, because Ramsey Miller talks about a broad, you know, complaint, whereas these air specific complaints and, you know, if they don't carry any weight, what the court explained and more Mr. Supreme Court explained more. We can't have a harmless error analysis here where the court did not. There's nothing on the record to indicate that the court even considered these issues. Um, the court did not say, well, I know that would have affected the ultimate case. The court made no comment whatsoever. In fact, the court during the statement and elocution, the court when the defendant finished his statement, the put the defendant's handcuffs back on. There was no indication that the court even heard him, much less considered the defendant's statements and in at the motion to reconsider sentence when the defendant again complained of his attorney's, um, failed the defendant's belief in his failings. The court told him we're not here to talk about that today. At what point? It was when the we're not going to talk about that today. I believe was that the motion reconsider sentence. And then when the during the hearing on the public defender fee, he asked him, are you willing to pay? The defendant expressed again his reasons why he didn't think he had to pay, which was because he felt his attorney had been ineffective. And the court said, I'll take that as a no. There was no indication the judge considered anything. The defendant said more plainly stated that when a defendant makes a complaint, the court is required at a minimum to inquire here. The court did not do so. Um, I think in the wake of more and around sick Miller, the court is required to do more than just sit silently by when the defendant makes a complaint. If even if the court thinks it's complete hogwash, the court must at least state on the record some sort of indication that it considered the defendant's claims. If they're specific like they were here, the courts could have had the court said, I consider all that. I understand your complaints. None of it. It's all you wouldn't found guilty. It's all furtile. So the court had to make some sort of a find. The court had to make some sort of a finding. You know, if you don't mind on the first issue, I do agree that the Collins standard applies on the first issue on the crank of issue around the first issue that you that has to be proven beyond reasonable doubt. Well, you have it that any rational trier of fact, you know, yes, I agree that that's what the standard is. So your argument is that no rational trier of fact could have found from this evidence that there was any type of premeditation or cold calculated point. Correct. Here, the state's entire argument was based on the notion that the anger towards john coma transferred to anybody around him who might have gotten in his way. What about when he says to the group, I'm gonna kill somebody. And he said there's evidence, he said to the group, I'm gonna kill somebody. Right. And I think it's very telling that the reaction of the group is basically nothing. Um, it seems that, I mean, he says, I'm going to kill you. But you have to remember, he is standing 40 away in a doorway to his apartment building while they're sitting seven guys sitting in a garage in a large group. So he should have gone over there to kill him. I'm just saying that the state argued in the brief, they argue in rebuttal argument at trial that he was attempting to goad somebody over to him as opposed to attacking them all with one knife. You know, he was trying to goad someone to him and then take that person out. And then with the facts that occurred where he, the person's walking away, nobody heard the person say anything. And they said, what did you say? There was some little pretext to then attack the person from behind. There was one witness who thought he heard, uh, skeletal say something. Mom, I'll just correct that statement. However, um, the notion that somebody is going to be enticed to go talk to a man who's drunk and raving and threatening to kill you. And then that person is going to come over to be killed. It's um, he threatened to kill him. He slashed the tires. He threatened the group. He didn't carve on the door. We'll kill. I know he denies that he did that. But I think a reasonable inference can be made that certainly he did that and kept going to the group. But he had a knife. I mean, this had been going on for what? Two or three days. Yes, Scott. But all of that is related to Edita and john. None of it has anything to do with Michael doesn't have to have something to do with Michael Skelton. I mean, did he have to plan to kill? Did he have to plan to kill Michael? Or could a plan to kill someone in the group be enough for calculating? I believe that there cannot be. This isn't a place where transferred intent can apply. Um, by where you intend to commit an act against Person A. And then in trying to commit the act against Person A, you spontaneously commit the act against Person B. Here he wasn't trying to injure john a coma and then injured, um, Michael Skelton. This was an isolate. This was an incident. Yes, the defendant had been behaving badly for several days leading up to the which by itself indicates that he's sitting around planning a murder. If he had killed Jen, would it have been cold and calculated and premeditated? It might have been. But by killing someone else from the group that wasn't here the way that it happened, the way that it was a separate incident that occurred later in the evening, if he had gone out there and said, I'm gonna kill you. And I'm willing to concede that maybe that would be that we would have something there. But didn't the group of these fellows in the garage when he did do this sort of taunt him and sort of laugh at him? Yes. And so he never expressed that he would kill editor who might be a target. He never expressed he would kill john. He just said, I'm going to kill somebody and that fueled the group. And so I so you're saying he has to have a design to kill a specific person. I'm saying that this aggravated factor requires more than simple premeditation. It requires a lengthy period of deliberation. It requires a proof of that the act is committed in a cold and the definition of cold comes from the Williams decision found that cold means not motivated by mercy or by the emotion of the moment. The killing of Michael Scalzo was 100% motivated by the emotion of the moment. Well, there have been several incidents during the night. Didn't you walk out though when he walked out that last time the knife, according to him, just happened to be on the table with his keys and his cigarettes or something. And he just accidentally picked up the knife. Is that does that make a great deal of sense? And in light of his his conduct for the preceding three, two or three days, according to other state witnesses, he had the knife the entire evening. It wasn't just that last time he went out. Well, what's he doing walking around with a knife if he's not going to kill somebody? Well, we have myriad cases where somebody brings a knife to a fist fight and they don't get found guilty. Well, cold, calculated, premeditated murder. The fact that he armed himself with a weapon when he was arguing with the group of seven men, it wasn't the wisest choice, but it's not proof of premeditation. Every case where this factor has been found to have been proven involve cases where the person makes tells there's more of an example of a plan happening of deliberation happening. Um, the case against, you know, Macri comes to mind where he told somebody explicitly how he was going to carry out this murder and then made it happen several months later and did it exactly as he said he was going to do it. Um, aren't most of these cases death penalty cases? Yes, they are. This is the only case that I have encountered that this factor was applied to extend a term or natural life. Well, let's let's talk about that a minute because I'm still a little confused. Are you really concerned about the fact that the judge might have considered the issue of natural life and then use the cold and calculated as part of that? And of course, we know we only got 55 years, which is not natural life. Or are you actually concerned about the fact that the state didn't prove holding calculated? Because if I just I don't understand why we're arguing holding calculated and that it was proven when I thought your primary argument was the judge wrongly considered that evidence in his sentencing. My argument is first that the state didn't prove it. And because the state didn't prove it, the defendant must be resentenced because the court anything in the sentencing hearing took into consideration that factor. The court did not explicitly say I'm considering natural life. What the court said was the court said that the range was 20 years to natural life. When the state asked for when the state made their argument, the state asked for natural life. The state said to the court, give this defendant what he deserves to spend the rest of his life in prison. When the defense counsel got to argue, defense counsel said the minimum is 20 years. You can go up to 60 to 100 or you can go up to natural life. The fact that natural life was on the table or that extended term was on the table was very clearly here. Um, and the court does not happen. I'm unaware of any case on that says the court has to explicitly say I'm considering this but not giving it to you because X, Y and Z. I think what the case law says is that if there's a possibility that the court considered this fact, the factor that wasn't a proven or was improper factor, the case must be remanded for resentencing. And here the fact that the defendant did have, you know, there's a qualitative difference between considering that somebody has 20 years to natural life on the table and giving them 55 years and consider which is a middle of the road sentence and considering that somebody has 20 to 60 years and giving them 55 years. Um, for all we know, had the court properly sentenced the defendant under knowing the range was 20 to 60, the court may have given him 30 years, 35 years. The defendant did have some mitigating factors here and the defendant did present an argument of self-defense, which of course was not found, but the court may have considered, the court did say you were drunk, you were angry, there were things about this offense that did not necessarily mean you must get 55 years. If the range is 20 to 60, you must get the max. And because of that, this case must be remanded for the court to consider the proper sentencing range in did the court actually say there was something in mitigation? Didn't the court say that he really found nothing in mitigation here? No, the court did say that it found some mitigation. Um, the court, like I said, the court talked about the fact that the defendant was drunk and angry. He did not specifically say that that that was mitigating, but he did concern. What he said was the defendant has evident that there's there's two witness, there's two experts saying he has post traumatic stress disorder. There's one expert saying he doesn't. The judge said, I don't know what's going on there. I find, however, that whether he has PTSD or not has nothing to do with this offense. So I'm not considering that. He then went on this when he listed off lots of the aggravating factors. He then turned to the mitigation and said, may I finish my evening? The court said, I find that you have a history of mental illness that you served in the military with a general discharge under honorable conditions and that you have family support that you tried to, um, continue your education. He had gotten his G. E. D. And while he did not have a lengthy history of employment at one location, he had worked throughout the years, um, even for brief periods. And the court found that the defendant had attended, um, classes while he was in the jail and had, you know, there was this. This is not a no mitigation case. The court did find that there was some mitigation here. Thank you. The court ultimately found that the defendant lacked any rehabilitative potential based upon his escalating and continued pattern of violence. Yes, he did. You want to wrap up? I'll say it for my brother. It's the same. Mhm. Come on. Your honor. My name is Randy. Seneca. I'll be arguing on behalf of the people. This matter. Let's start how she started. Start with Franklin first. Oh, sure. Um, this case is different from Ramsey Miller. It's clearly for the reason Justice Burke pointed out. I'm talking opposing counsel. There was a great deal of specificity in the claims this defendant raised at the motion to court was asking him about paying the public defender fee. Your honor, that was two days after the motion reconsidered, and there's no indication in the record whatsoever that he wasn't just rehashing the same claims he had brought up before. Rimsick Miller specifically addressed that point because in Ramsey Miller, you had the trial court addressing the defendants the laundry list of issues. And then at a later motion hearing, the defendant made just a general statement and said my counsel was in fact, and that's what we had here. We had a laundry list of things and then just a general statement after that. And Rimsick Miller specifically held that there's nothing in the record that showed that that related back to those specific states. I definitely agree with that, Your Honor. But I'm not sure about the time frame difference in Ramsey Miller. This is only two days. Um, and I'm not sure if the specificity of the claims in Ramsey Miller was the same here. I mean, for instance, take, for example, if defendant in Ramsey Miller, uh, had done what he did, had done what she did in in Ramsey Miller and said, um, I don't want this guy listed as my attorney anymore. I don't believe you represent me to the fullest of his ability. Had the trial court then said, Well, what do you mean by that? And then defendant had given given these exact same, um, claims as the defendant here. This evidence was introduced. They search my place without a warrant. And those same type of claims with that inquiry been sufficient? I would say definitely yes. Well, doesn't the court under Crankle, the court has to examine the factual basis of the defendant's claim. In this case, the defendant said during the diagram, something about a letter. There was a neighbor dispute. Go interview these neighbors. Court didn't really inquire at all about these complaints that the defendant had made. Did you? No, he didn't. And but the other concern is whether these claims are sufficiently made of record so that they can be addressed on appeal. Um, and the specificity with which the defendant articulate these claims allows that. I mean, uh, did the court ever ask the trial counsel anything about these? He didn't, Your Honor. And I don't think I don't think it's necessary in case long because I mean, more is obviously the starting point for this inquiry and more specifically says that if the claims on their face, are not culpable, you don't have to make an inquiry. Why? You may not have to make an inquiry. But if if these are so specific, why does the judge or shouldn't the judge then say? I heard your complaints. I heard this whole trial. I don't see those issues. Put the handcuffs back on. Why? That would have solved this problem. I understand what you're saying, Justice Hutchinson. But it's not the reasons of the trial court that are at issue. It is the actual ineffective assistance claims, which this court can see on the record. This court has equal opportunity to see see what happened in this record. Wait a minute. You want us to determine whether or not there was an effective assistance. Isn't that the trial court's job in a crankle hearing? That's not our job to determine in effect. Well, actually, it's stage. It's whether new counsel should be appointed to actually address the effective assistance. Well, first, the court has to make some inquiry before they even determine whether a new counsel needs to be appointed. Isn't that true? That's that's true. And I'm saying that inquiry was unnecessary in this case because the claims were so specific that that's the long sort of it. And also just to preserve this for, um, potential of filing P. L. A. Um, I've also articulated the reasons why I think Miller might not have been, um, accurately or rightly decided in the first. How dare you? And then there's versus no, but the 1st and 4th districts have ruled opposite to your honors in the second district. So I can turn out to the heightened agreement meditation issue if I could. Uh, what did the state like the state? The state case was cold and calculated. What was the state looking for? What did they ultimately want in terms of sense? In this case, we asked for natural life. And so that's why you went down the cold and calculator. That's why the state went down. We charged cold and calculated or heightened premeditation, if that's what we call it, because that's what this crime was. I mean, we had evidence to prove this element. And, uh, Justice Burke, you touched on it when talking to opposing counsel. There were three main pieces of evidence Purdue to prove this element. Number one, the threats that this defendant issued starting day before the murder and then the day of the murder, specifically to the members or the people in the garage. That's proof that the defendant was planning to do something. He armed himself with a knife and not just any knife pocket knife. No, you know, some night that you might wear your belt. No, it was a kitchen knife. Why are you carrying a kitchen knife around with him? Doesn't wasn't this a crime of passion, though? I mean, even though that the eventual target was not the girlfriend, wasn't this a crime of passion? It might have been a crime of passion if he killed the girlfriend the day before, when when this situation initially touched off or if he killed the boyfriend the day before. But, um, there's a there's also evidence that the defendant was trying to lure someone away from the garage is working pointed out as well. So those three pieces of evidence, the threats, the knife and specific evidence that he was trying to lure a member of this group away from the garage is plain sufficient under the Collins standard, which opposing counsel concede applies, um, for this court to affirm the conviction. As your as your opponent pointed out, a lot of the cold calculated preconceived plan cases were all of them that are mentioned in your brief and in her briefs are all death penalty cases. They are your honor. The legislature is behind the ball and amending the statute number one and number two. Um, I don't I'm not sure that this crime is charged as much as just regular old first degree murder. So, um, well, by the time that this case was charged, we were already beyond death penalty. We were in the the statute taking the death penalty references. Well, I understand that. But then your job is to prove beyond a reasonable doubt. And I'm not saying why don't you go the easy way? Why did you create this other layer? But what was the again? What was the purpose of doing that? Because this is an exceptionally bad guy who committed an exceptionally bad crime. This wasn't a regular old murder. There's a lot of exceptionally bad people who commit exceptionally bad crimes, but the crime doesn't fit within the elements of the stretch it because this guy was a bad guy. We had proof of these factors. How do you distinguish the people versus Haynes case? The plastic surgeon, the cosmetic surgeon. I mean, in that case, he went into the phone book and he found someone. So there was a specific target. Was Michael the specific or intended target in this case? All along? No, Your Honor. But I referenced in my briefs in my brief, I tells us unequivocally that you don't have to have a specific target. If the victim is a member of the group in that case, it was a game. But they devised that they devised a plan to kill a gang member like three days before. That's true, but not a specific game member, any game member. And our position in this case was Michael Delaney had said in his mind that he was gonna kill a group in the garage just because they're not part of a game. What's the difference? The people in Brown were gonna kill anyone on the porch who might conceivably be a member of the game. I mean, this is that kind of point. And opposing counsel doesn't respond to that in her reply brief. So I assume she's conceding the point. The door that apparently had will kill sort of scratched into it. That wasn't John's door, was it? No, Dave, uh, John, I don't believe had a apartment in the building. I think he was staying with somebody that was carved into the door in which the girlfriend was staying. But that wasn't her apartment either. She had. She had moved into one apartment and then after the first day of sort of escalating, didn't they actually re put her in yet another space? They did. And is that the door that was? It was, Your Honor. And then eventually, you know, at the time of the killing, she was in the apartment of the victim of this case. And, uh, opposing counsel says, Well, we don't know that he knew that. And we don't know that he didn't know that. I mean, he's outside all the time. She walked across the apartment to get into the victim's apartment. Um, and but that's not particularly germane either. Um, counsel brings up the idea of transferred intent. We never argued transferred intent. We never argued defendant intended to kill Adida or John and killed Scouser by mistake. I mean, that's a complete red herring. This is a situation where he definitely targeted this group. He didn't have someone to co conspire with. But thankfully for us, he announced his plan. I'm gonna kill one of you guys. One of you guys there and armed himself with the knife and periodically trying to lure someone from the garage. And when he did, he waited to let person turn his back. This is a devastating factor applied to anyone who threatens another person and then follows up on the threat. If could it apply to any person who threatens another and then follows up on it could, Your Honor. Um, and do you think the Legislature opened up a natural life sentence to any person who threatens another and then follows up Well, we have to have the requisite cooling off period. We have to have that, Your Honor. And, um, if you threaten someone and then kill him, you don't have that period. But, um, the case law tells us that a two hour and 40 minute time period to cool off is sufficient in order for the height of premeditation to apply. And here we had two hours and 45 minutes, and that's that's the bottom end of our time frame. I mean, if you go back to the day before us, you know, over a day he had to cool off before he decided to go through with his plan. So to answer your question, Your Honor, yes, but you gotta have the cooling off period in order to get there. Do you think the cooling off period has to apply to the group? I know I know it wasn't his single out Michael scales up, but but your argument is he singled out the group and wanted to get somebody over from the group. But the threats before that, up until that night race against John, they were, Your Honor. But then at the time of the murder, they're part of the group, too. Well, gentlemen, Sandita's never in the garage. Well, uh, she does go to the scholars of the apartment. There's no evidence that she's moving around the garage. Yes, but the Coleman is the Coleman is in the garage. So but at bare minimum, we have two hours and 45 minutes, which let's talk about sentencing. Um, your position is is well, the court never really took all of this into consideration at the sentencing hearing. They sentenced him without it. In light of the fact that natural life was on the table at that sentencing, doesn't that uh, have the court weighing? Okay, minimum versus natural life as opposed to minimum versus 60 years. Isn't that going to have an impact on the sentence of the court? Um, not in this case, Your Honor. This is an unusual case. This isn't a typical extended term case. 60 to 100 years is a discretionary call on the court. So even if we prove the factor, even if we proved pre meditation, which we did, um, he he doesn't have to go 60 to 100. He can still go within the unextended range. And the operative concern for your honors is whether or not the record shows that he used the extended term as a reference point in fashioning this specific sense. In this case, he clearly did it. He mentioned it once at the beginning of the sentencing hearing. I suppose I may oppose 60 to 100 because it's heightened premeditation. That's the only time he says it. And then he goes on to give your honors a long list of why he opposes the sentence. This guy has a long, long criminal history, and it's a violent criminal history. He's he's abused police officers, abused, uh, better police officers. It's better all sorts of people. He's spent time in the penitentiary, and, um, the trial court also went out of his way to show how or to articulate how defendant offered a cockamamie story on how this happened and how the trial court believed that it was a lie. As Justice Hutchinson, you mentioned he accidentally picked up the kitchen knife when he picked up his keys in his wallet. So he showed absolutely no contrition here. Um, no rehabilitative potential. And this term of 55 years within the unextended range is therefore viable. I mean, there there was mitigation evidence presented, and the trial court did consider it. But that's the reason why you get 60 years, the maximum unextended range. Even even without the hyper premeditation, this, uh, sense should be affirmed. If it seems like the emphasis on the extended or the natural life came from counsel, as they argued, if the court wasn't going to consider that, maybe shouldn't he have said something about Wait, let's make sure we're on the right page about this. You know, there was a misapprehension apparently with counsel, both counsel because defense counsel said, Well, yeah, he might be entitled to that. But we would we really think this is 20 years or the minimum. Shouldn't a trial judge correct that if he's not going to consider this cold and calculated, uh, term or cold and calculated factor? My time's up. If I could have the question, um, the extended term is well, let me answer your question directly. Ideally, yes, he could have said that I'm not going to consider the unextended term or the extended term. I'm gonna use my discretion and not do it. But it's not necessary if we can tell from the record that he didn't use the extended term as a reference point, and he clearly didn't. He he most definitely clearly didn't. He only mentioned it once. It's at the beginning. He says it's discretionary call, and then he proceeds to sentence them within the unextended range. I mean, if he had it as a reference point, this guy's gonna get over 60 years. He's a bad guy. Thank you. People ask that your honors affirmed conviction. Intense. Thank you. Thank you. Montgomery turning briefly to the crankle issue. Um, what council referred to? If the court had said, What do you mean by that? This would have been a sufficient inquiry. That didn't happen here. The court said nothing. The defendant made specific claims, and the court said and did nothing. Um, this isn't a his attorney was ineffective because it involves matters outside the record. While the defendant gave some specific, uh, facts about those things, we don't know what the letter said. We don't know what the diagram shows. We don't even know if he actually gave them to his attorney because we didn't ask the attorney. Did he give you those things? Did you look at him? None of that happened here. The record is completely insufficient to make that determination, and that is why the court was required to do a crankle inquiry here. Um, turning to the fact that he armed himself with a knife. It's a challenging fact. I'll admit it. The problem is, or I shouldn't say the problem, but it's important to know the state knife here. It's a weapon of opportunity. It's not like he went out and bought a Bowie knife or winning. Got a gun like some of the defendants in the case of cited in our briefs. There was no going out and finding the perfect weapon to commit this offense. He grabbed a state knife off his kitchen counter. Um, and this wasn't a plan to kill somebody in the group. The state was, uh, clearly by setting up their timeline for this case to have started two days before this offense, they clearly were trying to argue the intent towards Edita and John because of the intent was only about an intent, a premeditated plan to kill someone in this group. Who cares about what happened two days before the offense? Well, we counsel argues that there was this two or two hour 45 minute cooling off period. Did this man ever cool off? No, he absolutely never cooled off this entire time. He was angry and upset. He went outside, he confronted, he would yell at them or perhaps just rambled to himself as one of the state's witnesses said, and they would taunt him. There is no time for him to go cool off and decide. Okay, well, they're making me really mad, but I'm gonna, I'll just go to my apartment. No, I'm gonna go kill him. There was none of that. He went downstairs, they confronted each other. And if the plan all along was to kill someone in this group, why didn't he kill John Tacoma in the vestibule when they were one on one with each other away from witnesses? He, according to John Tacoma, had a knife at that time, and John Tacoma is the one he's angry with. If someone, if he wants to kill someone in that group to be back at John's the guy and here they are alone in the vestibule and he tells John go away. This completely belies any argument that the defendant was had a plan to kill anyone in this group. Let's put the enhancement factor aside and look at the court's statement saying 20 years, the maximum natural life may be the maximum. It's permissive, natural sentence, not mandatory. The fact that the court didn't mention this enhancement in their sentencing. How is it not harmless? If, uh, it, how is it? How is it not harmless? The sentence that was given not taking natural life into consideration because we cannot tell from this record whether the court considered it or not. Why? Why not? I mean, the court never mentioned. Well, the court, that's the thing. They mentioned a laundry list of things that they took into consideration. Never mentioned that. Well, the court acknowledged at the beginning, though, that it understood that it could impose natural life. If the court had said it's discretionary, I can. He did. But and then it said, I'm not going to in this case. We would know, but we don't know because he didn't say that. And the fact of the matter is, this case has to go back to the crinkle inquiry. There's no harm in having the defendant re sentenced and have to give the court the that's entirely possible here. Um, and Justice Burke mentioned during my opening argument about the court's finding the defendant had no rehabilitation potential. Well, the fact of the matter is the defendant's 50 years old. A 30 to 40 year sentence is going to be a life sentence for him anyway. It would have made sure that he was locked up forever to never harm anyone again. So the 55 is completely unnecessary. And if the judge is really looking at 20 to 60 and I just need long enough to keep you locked up for your life, 55 is not is beyond that. And it's a middle of the road sentence from life to 20 years. I think that it's probably, I'm sorry. So he's 50 years old. How many years will ensure that he would never get out of prison? Given that he had health concerns as well. I would say 30 to 40 years. I know there's there's federal case law on a 40 year sentence is a de facto life sentence. But given the fact that he's 50 years old, the chance that he's going to live to see 80 or 90 and then get out and commit new offenses seems rather unlikely. Um, additionally, I wanted to comment to wrap up. Yes. Um, the defendant did express some remorse in the statement and allocution. It was not that he had no remorse here. He did apologize to edit his family. Um, and uh, so I just want to clear that up now for all these reasons and those stated in the briefs, we'd ask your honors to vacate the finding that the defendant had committed the offense in a cold calculating premeditated way, vacate a sentence and remanded for resentencing. And additionally, remand the case for a proper preliminary crankle inquiry. Thank you counsel for the state as well as defense. Thank you very much for your very well thought out arguments. We appreciate your time here. We will take this case under consideration and a decision will be rendered in due course. The court will be in brief recess before we start the next case. Thank